UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| SPINE IMAGING MRI, L.L.C., *a Minnesota limited liability company*,<br><br>                      Plaintiff,<br><br>v.<br><br>COUNTRY CASUALTY INSURANCE COMPANY, *an Illinois corporation*, COUNTRY MUTUAL INSURANCE COMPANY, *an Illinois corporation*, and COUNTRY PREFERRED INSURANCE COMPANY, *a Missouri corporation*,<br><br>                      Defendants. | Civil No. 10-480 (JRT/ALB)<br><br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |

Eric C. Tostrud and Matthew R. Salzwedel, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401, for plaintiff.

Richard S. Stempel and Robert J. Anthonsen, **STEMPEL & DOTY PLC**, 41 12th Avenue North, Hopkins, MN 55343, for defendants.

Plaintiff Spine Imaging MRI, L.L.C. ("Spine Imaging") provides magnetic resonance imaging ("MRI") services which assist in identifying and analyzing neck and spine injuries. At issue before the Court is whether Spine Imaging violates Minnesota's prohibition on the corporate practice of medicine by taking MRI images and maintaining independent contractor relationships with licensed medical professionals who analyze the images for clients. This issue is also central to another lawsuit before the Court. *See Spine Imaging MRI, L.L.C. v. Liberty Mutual Insurance Co., et al.*, No. 09-1963, 2010 WL 3893678 (D. Minn. Sept. 30, 2010).

Spine Imaging brought this action for a declaratory judgment against defendants Country Casualty Insurance Company, Country Mutual Insurance Company, and Country Preferred Insurance Company (collectively, "defendants"), which insure some of Spine Imaging's clients. Defendants have moved to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. They also urge the Court to dismiss the action on the ground of abstention. For the reasons stated below, the Court denies defendants' motion.

## BACKGROUND

Spine Imaging is a Minnesota business specializing in the provision of MRI services to assist physicians and chiropractors with the diagnosis and treatment of various medical conditions, often related to the neck and spine. (Compl. ¶ 21, Docket No. 1.) Spine Imaging alleges that although it is owned and operated by an individual who is not a licensed physician or chiropractor, it does not employ any licensed physicians or chiropractors as part of its medical imaging practice. (*Id.* ¶¶ 22-23.)

Spine Imaging alleges that the provision of MRI services is comprised of two distinct steps: a technical component and a professional component. (*Id.* ¶ 27.) The technical component involves physically taking the MRI scan, while the professional component involves interpreting and analyzing the image that results from the scan. (*Id.* ¶¶ 28-29.) Spine Imaging asserts that it only performs the technical component of MRI services through the MRI technicians it employs, and that it "maintain[s] independent-contractor relationships with board certified radiologists, neuroradiologists, and skeletal radiologists, who provide patients with interpretational MRI services and prepare

summary reports." (*Id.* ¶ 31.) Physicians and chiropractors often refer patients to Spine Imaging. (*Id.* ¶ 42.) Spine Imaging argues that its structure and practice do not violate Minnesota's corporate practice of medicine doctrine.

Defendants provide no-fault automobile insurance in Minnesota. (*Id.* ¶ 46.) Treatment for many injuries sustained by insured individuals who suffer car accidents relies upon accurate MRI services. (*Id.* ¶ 45.) Spine Imaging derives a significant amount of revenue from claim reimbursements from insurers, including defendants. (*Id.*)

On February 15, 2010, defendants sent Spine Imaging a letter stating that, based on facts made clear in *Spine Imaging* and another state court case, "it appears that Spine Imagine MRI is in violation of the Corporate Practice of Medicine Doctrine." (*Id.*, Ex. A.) Because of its belief that Spine Imaging "knowingly and intentionally violated the Corporate Practice of Medicine Doctrine," defendants requested reimbursement for $99,848.00, the total amount they had paid Spine Imaging. (*Id.*)

Spine Imaging filed suit under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Minnesota's Uniform Declaratory Judgments Act, Minn. Stat. § 555.01. Spine Imaging sought a declaration that (a) the physical taking of MRIs does not constitute the practice of medicine; (b) Spine Imaging's practice of engaging independent contractors to provide the professional component of MRI services does not violate the corporate practice of medicine doctrine; (c) Spine Imaging did not knowingly or intentionally violate the corporate practice of medicine doctrine; and (d) Spine Imaging is

not knowingly or intentionally violating the corporate practice of medicine doctrine.[1]  (*Id.* ¶ 73.)

Defendants have moved to dismiss the action on several grounds.  First, they argue that the Court lacks subject matter jurisdiction because the amount in controversy requirement for a diversity case has not been established and there is no controversy ripe for adjudication.  Defendants also argue that Spine Imaging is not entitled to the declaratory relief it seeks because it is and has been violating the corporate practice of medicine doctrine.  Finally, defendants urge the Court to refrain from deciding this case out of deference to parallel proceedings in state court.

**ANALYSIS**

**I.    MOTION TO DISMISS UNDER RULE 12(B)(1)**

**A.    Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction.  *Uland v. City of Winsted*, 570 F. Supp. 2d 1114, 1117 (D. Minn. 2008).  Spine Imaging must prove the existence of jurisdiction by a preponderance of the evidence.  *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005).  In considering such a motion, the Court construes the factual allegations in the pleadings as true and views them in the light most favorable to the non-moving party.  *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir. 2008).  The Court may also consider matters outside the pleadings without converting the

---

[1] Spine Imaging consolidated the latter two requests, but the Court will consider them separately.

12(b)(1) motion into one for summary judgment. *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 n.4 (8th Cir. 2003).

## B. Spine Imaging Has Met the Amount in Controversy Requirement

28 U.S.C. § 1332(a) provides for federal subject matter jurisdiction over civil actions between completely diverse parties "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." "[T]he amount in controversy [for purposes of diversity jurisdiction] should be determined at the time of filing." *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003). It "is measured by the value of the object of the litigation." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Defendants claim that Spine Imaging has not met the amount in controversy requirement because it attempts to use an amount, $99,848.00, already paid to Spine Imaging by defendants instead of an outstanding amount due for services performed.

In their February 15, 2010 letter to Spine Imaging, defendants clearly (a) expressed their belief that Spine Imaging "knowingly and intentionally violated the Corporate Practice of Medicine Doctrine," and (b) **requested reimbursement** for the total amount they had paid Spine Imaging, $99,848.00. (Compl., Ex. A, Docket No. 1.) Defendants' reimbursement demand is sufficient in and of itself to satisfy the amount in controversy requirement. Defendants have asserted their legal entitlement to a sum larger than the jurisdictional threshold amount; Spine Imaging contests their right to that sum. "The purpose of declaratory judgment is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to

wait until his adversary should decide to bring suit, and to act at his peril in the interim." *Riley v. Dozier Internet Law, PC*, 371 Fed. Appx. 399, 409 (4th Cir. 2010) (quotations omitted). The Court is not deprived of jurisdiction because defendants have not formally declined to reimburse Spine Imaging for any **pending** charges at the time the complaint was filed, and have not (yet) filed suit or brought a counterclaim.

Moreover, contrary to defendants' assertions, the February 15, 2010 letter evinces defendants' intent to cease reimbursing Spine Imaging for future MRI scans performed on its policyholders. While defendants did not explicitly refuse to continue reimbursing Spine Imaging, their position that Spine Imaging was not entitled to reimbursement, coupled with their demand for reimbursement of all prior payments, is sufficient to place future reimbursements in dispute. Spine Imaging has submitted an affidavit stating that since January 1, 2005, it has generated gross revenue of over $8 million dollars, most of which is derived from reimbursements from no-fault insurers such as defendants. (Aff. of Jennifer Hentges ¶ 3, June 14, 2010, Docket No. 19.) The Court concludes that Spine Imaging's allegations and this additional evidence regarding the likelihood of future losses also satisfies the amount in controversy requirement. *See Spine Imaging*, 2010 WL 3893678, at *7 ("A reasonable fact finder could conclude that defendants' continued refusal to pay for its insureds' claims will cause Spine Imaging damage in excess of $75,000.").

For the first time in their reply brief, defendants assert that Spine Imaging failed to establish the requisite amount in controversy with respect to each individual defendant. While plaintiffs generally cannot aggregate separate and independent claims against

multiple defendants to achieve the amount in controversy for diversity jurisdiction, "where two defendants are jointly liable, the same damages can satisfy the amount-in-controversy requirement as to both defendants." *Martinez v. Martinez*, No. CIV 09-0281, 2010 WL 1608884, at *18 (D.N.M. March 30, 2010); *see also First Transit, Inc. v. City of Racine*, 359 F. Supp. 2d 782, 785 (E.D. Wis. 2005). As the Court construes plaintiff's complaint, Spine Imaging seeks to hold defendants jointly liable. Spine Imaging does not distinguish between defendants at all; to the contrary, it characterizes all allegations as collectively taken.[2] The same amount in controversy applies to the three jointly liable defendants for purposes of diversity jurisdiction.

While defendants have not challenged the existence of diversity, the Court notes, as it did in *Spine Imaging*, that Spine Imaging has failed to allege in its complaint the citizenship of Spine Imaging, L.L.C.'s members. 2010 WL 3893678, at *7-8. *See Bilello v. Kum & Go*, LLC, 374 F.3d 656, 659 (8th Cir. 2004) ("[W]hen the record indicates jurisdiction may be lacking, we must consider the jurisdictional issue sua sponte."). Section 1332 requires complete diversity of citizenship, which "exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Onepoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). "An LLC's citizenship, for purposes of diversity jurisdiction, is the citizenship of each of its

---

[2] Moreover, defendants have the same principal place of business and registered agents, and are all part of an umbrella entity called Country Financial Group. (*See* Compl. ¶¶ 14-17.) Defendant Country Casualty Insurance Company is a wholly owned subsidiary of defendant Country Mutual Insurance Company. (Rule 7.1 Discl. Statement, Docket No. 13.)

- 7 -

members." *Id.* Accordingly, the Court directs Spine Imaging to properly plead the citizenship of all of Spine Imaging, L.L.C.'s members.

## C. Controversy is Ripe

Defendants claim, as did the insurance providers in *Spine Imaging*, that Spine Imaging's claims for declaratory relief are not ripe for adjudication. *See* 2010 WL 3893678, at *10. The ripeness doctrine, which applies to declaratory judgment actions, "is grounded in both the jurisdictional limits of Article III of the Constitution and policy considerations of effective court administration." *Pub. Water Supply Dist. No. 8 of Clay County, Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 935 (8th Cir. 2005). Under Article III, § 2, of the Constitution, federal courts cannot exercise judicial power unless there is an actual case or controversy. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006); *see also* 28 U.S.C. § 2201(a) (Declaratory Judgment Act limited to cases "of actual controversy"). Federal courts may not issue advisory opinions. *Pub. Water Supply*, 401 F.3d at 932. Defendants assert that Spine Imaging's requests for declaratory relief are based on contingent and speculative future disputes, since defendants have not denied plaintiff payment for any insured's claim.

Proof that defendants have formally denied payment, however, is unnecessary to fulfill the ripeness doctrine in this case. "The essential distinction between a declaratory judgment action and an action seeking other relief is that in the former **no actual wrong need have been committed or loss have occurred in order to sustain the action**." *County of Mille Lacs v. Benjamin*, 361 F.3d 460, 464 (8th Cir. 2004) (quotation and citation omitted; emphasis added); *see also ANR Pipeline Co. v. Corp. Comm'n of State*

*of Okl.*, 860 F.2d 1571, 1578 (10th Cir. 1988) ("Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act.").

Based on defendants' repayment demand and assertion that Spine Imaging is violating the corporate practice of medicine doctrine, as well as the allegations in Spine Imaging's complaint, the Court concludes that a substantial controversy ripe for adjudication exists. *See Spine Imaging*, 2010 WL 3893678, at *10.

## II. MOTION TO DISMISS UNDER RULE 12(B)(6)

### A. Standard of Review

Defendants have also moved to dismiss this suit for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Although a complaint need not contain "detailed factual allegations" to survive a motion to dismiss, it must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint. *Mensing v. Wyeth, Inc.*, 588 F.3d 603, 605 (8th Cir. 2009).

### B. Spine Imaging Has Stated a Claim

Defendants argue that Spine Imaging is not entitled to relief because it has been and is in violation of Minnesota's corporate practice of medicine doctrine as a matter of law.

Minnesota law prohibits an individual or corporation from practicing medicine without appropriate licensure or registration. *W. Nat. Mut. Ins. Co. v. Stand Up Mid-Am. MRI, Inc.*, No. A10-566, 2010 WL 4825320, at *3 (Minn. Ct. App. Nov. 30, 2010); *see also* Minn. Stat. § 147.081, subd. 1. A person is "practicing medicine" when, among other things, she "offers or undertakes to prevent or **to diagnose**, correct, or treat in any manner or **by any means, methods, devices**, or instrumentalities, any disease, illness, pain, wound, fracture, infirmity, deformity or defect of any person[.]" Minn. Stat. § 147.081, subd. 3(3) (emphasis added); *see also* Minn. Stat. § 146.01 (defining the "practice of healing" as including "the diagnosis, analysis, treatment, correction, or cure of any disease, injury, defect, deformity, infirmity, ailment, or affliction of human beings, or any condition or conditions incident to pregnancy or childbirth, or examination into the fact, condition, or cause of human health or disease, . . .").

The Minnesota Supreme Court first considered the corporate practice of medicine over seventy years ago. *See Granger v. Adson*, 250 N.W. 722 (Minn. 1933). Granger was a non-licensed lay person who conducted "health audits," in which he provided the results of four urinalyses and a blood pressure test annually. *Id.* at 722. Granger had a contract with a pathologist to "furnish the results of the analyses to him." *Id.* Based on the analyses, Granger would advise his subscribers on diet, habits, exercise, and the need to see a physician if abnormalities in the analyses suggested such. *Id.* Since the contracted doctor was engaging in the practice of medicine in forming his analyses, the Minnesota Supreme Court determined that Granger was practicing medicine "when he passed on to his subscribers the result of the analysis and the advice of the pathologist."

*Id.* at 723. Just as "a corporation or layman could not indirectly practice law by hiring a licensed attorney to practice law for others for the benefit or profit of such hirer[,]" the court concluded that "it is improper and contrary to statute and public policy for a corporation or layman to practice medicine in the same way." *Id.*

The corporate practice of medicine doctrine "has only recently reemerged in Minnesota jurisprudence as a force governing control of entities that provide medical services." *Spine Imaging*, 2010 WL 3893678, at *4. *See Isles Wellness, Inc. v. Progressive N. Ins. Co.* ("*Isles Wellness II*"), 725 N.W.2d 90, 95 (Minn. 2006) (contract will not be voided despite violation of corporate practice of medicine "unless it is established that the corporation's actions **show a knowing and intentional failure to abide by state and local law.**") (emphasis added); *Isles Wellness, Inc. v. Progressive N. Ins. Co.* ("*Isles Wellness I*"), 703 N.W.2d 513, 524 (Minn. 2005) (corporate practice of medicine doctrine applies to chiropractic clinics); *see also Stand Up Mid-Am. MRI v. Allstate Ins. Co.*, No. A09-1108, 2010 WL 1440199, at *2 (Minn. Ct. App. Apr. 13, 2010).

Both *W. Nat. Mut. Ins. Co.* and *Allstate* concerned an MRI provider, Stand Up Mid-America, which paid a licensed chiropractor to analyze MRI images. Insurance companies refused to reimburse Stand Up for its services, arguing it was in violation of the corporate practice of medicine doctrine. *W. Nat. Mut. Ins. Co.*, 2010 WL 4825320, at *2-3; *Allstate*, 2010 WL 1440199, at *1. After a bench trial, the district court in *Allstate* concluded that the company's technical taking of MRI images did not violate the doctrine, but that its interpretation and analysis of the images through the chiropractor

did. 2010 WL 1440199, at *1. Since the Minnesota Supreme Court first applied the corporate practice of medicine doctrine to chiropractic in *Isles Wellness I* after the events at issue in the *Stand Up* case, however, the court in *Allstate* further concluded that the MRI provider did not knowingly or intentionally violate the doctrine. *Id.* The insurance provider was therefore required to reimburse the company for services rendered. *Id.* In an unpublished decision, the Minnesota Court of Appeals affirmed. *Id.* at *5. In *Nat. Mut. Ins. Co.*, the Minnesota Court of Appeals issued another unpublished decision in which it affirmed a grant of summary judgment to Stand Up on the ground that it did not knowingly and intentionally violate the corporate practice of medicine doctrine and was therefore entitled to collect the balance due from the insurance providers for previous services rendered. 2010 WL 4825320, at *5.

Whether Spine Imaging's use of independent contractors was and is a violation of the corporate practice of medicine doctrine – let alone a knowing and intentional violation – is far from a settled issue under Minnesota law. First, with regard to *W. Nat. Mut. Ins. Co.* and *Allstate*, "unpublished opinions of the [Minnesota] court of appeals are not precedential . . . ." *Nat. Mut. Ins. Co.*, 2010 WL 4825320, at *4; *see also Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 715 (8th Cir. 2004) (a court sitting in diversity "must predict how [the Minnesota Supreme Court] would decide [an] unresolved issue of state law, . . ."). In addition, neither decision considered the application of the corporate practice of medicine doctrine to an MRI provider's use of a licensed independent contractor to analyze images; that issue was not raised on appeal.

Neither order can be used as even persuasive authority for the proposition proponed by defendants, that under Minnesota law the corporate practice of medicine doctrine categorically applies to MRI providers. To the contrary, the district court in *Allstate* had concluded that the company's "taking of the MRI images" alone did not violate the doctrine. 2010 WL 1440199, at *1.

Moreover, the unpublished appellate decisions essentially confirm that if an MRI provider violates the corporate practice of medicine doctrine in a way that was not knowing or intentional, its contract with insurance providers will not be voided. The determination of whether a violation was "knowing and intentional" is fact reliant. *See W. Nat. Mut. Ins. Co.*, 2010 WL 4825320, at *1-2 (citing testimony of MRI provider owner about his awareness of *Isles Wellness* and his consultation with an attorney at the time the business was incorporated). Accordingly, even if the Court were to conclude, on the basis of *W. Nat. Mut. Ins. Co.* and *Allstate*, that Spine Imaging had not properly stated a claim for declaratory relief regarding claims (b) and (d) (whether its engaging independent contractors to analyze the images does not violate the doctrine and whether it is not currently intentionally and knowingly violating the doctrine), the Court would nonetheless be obliged to retain claims (a) and (c) (whether taking the scans itself violates the doctrine and whether it knowingly and intentionally violated the doctrine in the past). In short, *W. Nat. Mut. Ins. Co.* and *Allstate* do not oblige the Court to grant defendants' motion to dismiss; rather, they offer persuasive authority for the position that two of Spine Imaging's claims for declaratory relief should **not** be dismissed.

Minnesota Supreme Court precedent, or Minnesota statutes, likewise do not clearly dictate that Spine Imaging's complaint has failed to state a claim upon which relief can be granted. In *Isles Wellness I*, the Minnesota Supreme Court considered several factors in determining whether particular practices were covered by the corporate practice of medicine doctrine, including whether there was a state licensing requirement for providers of the service, whether the providers exercise unfettered independent judgment when providing the care, whether the providers must first obtain a referral from a licensed health care professional, and whether they are supervised by a licensed professional when providing the service. 703 N.W.2d at 522-24; *see also Granger*, 250 N.W. at 723 ("Neither do we see any objection to the employment by physicians of technicians and other experts, the results of whose work the physicians interpret as a help to diagnosis."). The complaint contains no admissions that Spine Imaging's MRI technicians are licensed by the state or exercise unfettered judgment in the provision of health care services; rather, it performs MRI scans on referrals from licensed medical professionals. (Compl. ¶ 42, Docket No. 1.) Accordingly, the Court cannot conclude as a matter of law that Spine Imaging's taking of MRI scans itself violates the corporate practice of medicine doctrine.

Neither can the Court conclude that Spine Imaging's relationships with independent contractors who analyze the MRI images violates the corporate practice of medicine doctrine without the benefit of discovery. Granger had a "contract" with the pathologist to provide the results of the subscribers' analyses, but he did not simply pass on the pathologist's written results of the analyses to subscribers; he relied upon the

pathologist's analyses to offer a diagnosis including advice about diet, habits, exercise, and the need to consult a physician himself. *Granger*, 250 N.W. at 722 ("[If] an analysis shows serious abnormal condition, **he** advises his subscriber to consult a competent physician, but, if the abnormality is slight, **he** advises him in regard to proper diet, habits, and exercise, should the report of [the pathologist] advise such." (emphasis added)). According to Spine Imaging, it does not itself offer medical opinions or advice "regarding what the person who has undergone an MRI at Spine Imaging should do with the MRI results; instead, that task is left to the consulting radiologists with whom Spine Imaging independently contracts to read and interpret the physical images, or to the patient's doctor or chiropractor." (Pl.'s Opp'n, at 33, Docket No. 16.)

In addition, an important public policy concern animating the Minnesota Supreme Court's decision in *Isles Wellsness I* was that "corporate employers could interfere with **independent medical judgment**[,]" 703 N.W. 2d at 523 (emphasis added), but Spine Imaging alleges that its independent contractors retain independence in exercising their medical judgment. The Minnesota Supreme Court has not yet considered how an independent contractor relationship might affect the corporate practice of medicine doctrine. *See Allstate*, 2010 WL 1440199, at *3 (noting that the service provider in *Isles Wellness II* **employed** a chiropractor).[3]

---

[3] Spine Imaging also cites Minn. Stat. § 144.565, subd. 1(2), which requires "diagnostic imaging facilities and diagnostic imaging services in Minnesota" to report annually to the Minnesota Department of Health "the names of all physicians with any financial or economic interest excluding salaried physicians . . . and all other individuals with a ten percent or greater financial or economic interest in the facility[.]" (emphasis added). This statute offers some support for Spine Imaging's position that the Minnesota legislature did not intend to prohibit lay

(Footnote continued on next page.)

As in *Spine Imaging*, in which Spine Imaging moved to dismiss the counterclaims of a defendant insurance company, the Court concludes that while several of these issues may be ripe for summary judgment after discovery has been conducted, it is too early in this litigation to conclude as a matter of law whether Spine Imaging is entitled to the declaratory relief it seeks. *Spine Imaging*, 2010 WL 3893678, at *12.

**III. ABSTENTION**

Finally, defendants urge the Court to abstain from deciding the issues in this case under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) and *Burford v. Sun Oil Co.*, 319 U.S. 315, 339 (1943), in deference to state court proceedings addressing the corporate practice of medicine doctrine in the context of an MRI service provider. Federal courts

> have a virtually unflagging obligation . . . to exercise the jurisdiction given them, even when there is a pending state court action involving the same subject matter. Thus, a federal court may divest itself of jurisdiction by abstaining only when parallel state and federal actions exist and exceptional circumstances warrant abstention.

*Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 534 (8th Cir. 2009) (quotations and citations omitted). When a request "moves beyond abstention to dismissal," as in this case, "considerably weightier reasons have to be in place." *Id.* n. 7.

---

(Footnote continued.)

people from owning MRI facilities, potentially including those who employ or independently contract with licensed medical professionals. *See Williams v. Mack*, 278 N.W. 585, 587 (Minn. 1938) (statute regulating optometrists made it "impliedly lawful for a licensed optometrist to work for one engaged in the business of selling eyeglasses at retail . . . .").

The Court need not consider the existence of exceptional circumstances. In the Eighth Circuit, parallelism requires, at minimum, "[t]he **pendency** of a state claim based on the **same general facts** or subject matter as a federal claim and **involving the same parties** . . . ." *Id.* at 535 (emphasis added). Neither *W. Nat. Mut. Ins. Co.* nor *Allstate*, the two state cases cited by defendants as warranting the Court's abstention, involve the same facts or even substantially the same parties. Moreover, it appears that both cases, Minnesota Court of Appeals decisions not appealed to the Minnesota Supreme Court, are no longer pending.

As in *Spine Imaging*, abstention is unwarranted. See *Spine Imaging*, 2010 WL 3893678, at *11.

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 8] is **DENIED**.

2. Spine Imaging may file an amended complaint within thirty (30) days of the filing of this Order addressing the inadequacies discussed above. Spine Imaging is directed to respond to the Court's inquiry into the citizenship of Spine Imaging, L.L.C.'s members.

DATED: February 1, 2011  
at Minneapolis, Minnesota.

                                                 s/ John R. Tunheim  
                                                 JOHN R. TUNHEIM  
                                                 United States District Judge